

BC 000950

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH K. RUSSELL, Pro Se, individually and as grandparent
and on behalf of herself and minors
R.Q, J.Q, and M.Q,
Plaintiffs

–VS–

SANILAC COUNTY, et. al,

SANILAC COUNTY DEPARTMENT OF

HUMAN SERVICES, et. al,

SANILAC COUNTY DEPARTMENT OF

CHILD PROTECTIVE SERVICES, et. al,

STATE OF MICHIGAN DEPARTMENT OF

HUMAN SERVICES, et al,

HEIDI KRAUSE, individually and in her official capacity

as Sanilac County CPS caseworker,

KRIS KREGER, individually and in her official capacity

as Sanilac County CPS caseworker,

JAYMIE REINKE, individually and in her official capacity

SHELLEY MARNAR, individually and in her official capacity

as Sanilac County Foster Supervisor,

ELAINE BORKOWSKI, individually and in her official capacity as

attorney and court appointed AGAL for minor children ,

RICHARD FOSTER, individually and in his official capacity as CPS supervisor,

JODI SHINN, individually and in her official capacity as CPS supervisor,

DEBORAH WALBECQ, individually and in her official capacity as

Case: 1:14-cv-13134
Judge: Ludington, Thomas L.
MJ: Morris, Patricia T.
Filed: 08-14-2014 At 11:31 AM

1

former Sanilac County CPS director,

WILLIAM WESTON, individually and in his official capacity as

Sanilac County CPS director.

RUSSELL W. CLARK, individually and in his official capacity as

former Sanilac County Juvenile Court Attorney Referee,

HEATHER ZANG, individually and in her official capacity as

Sanilac County Juvenile Court Attorney Referee,

DAVID L. CLABEUSCH, individually and in his official capacity as

former Sanilac Coounty Juvenile Court acting Judge,

GREGORY S. ROSS, individually and in his official capacity as

Sanilac County Chief Judge,

ERIC SCOTT, individually and in his official capacity as

Sanilac County Assistant Prosecutor,

STEVE YEAGER, individually and in his official capacity as

Director of Michigan Children's Services,

ELIZABETH WISENBAUGH, individually and in her official capacity as

father's court appointed attorney,

HEATHER MAIN, individually and in her official capacity as

court appointed AGAL for minors,

PATRICK R. QUINTANO, SR, individually

JEANETTE TROPF—QUINTANO, individually

JOHN AND JANE DOES 1—100, individually and in official capacity

---

2

2

COMPLAINT FOR INJUNCTIVE, ECONOMICAL AND PUNITIVE RELIEF FOR DEPRIVATION OF
VESTED RIGHTS OF THE UNITED STATES CONSTITUTION; VIOLATION OF MICHIGAN
COMPILED LAWS; MICHIGAN'S CHILDREN'S PROTECTIVE SERVICES MANUAL; FEDERAL
"FOSTERING CONNECTIONS TO SUCCESS AND INCREASING ADOPTIONS ACT"OF 2008;
CHILD ABUSE; CHILD NEGLECT; CHILD ENDANGERMENT; PERJURY; CONSPIRACY;
ORGANIZED CRIME; FRAUD; GROSS MISCONDUCT; and MALICE;

## PARTIES

1.      Plaintiff, DEBORAH K. RUSSELL ("Plaintiff"), is and has been a resident of Sanilac

County, Michigan for 50 years.

2.      Minor Plaintiffs R.Q ("R"), J.Q ("J"), and M.Q ("M") are currently residents of Sanilac

County, Michigan and plaintiff is these minor children's only biological Grandmother.

3.      Defendants are all employees of the State of Michigan being charged in part in their

official capacities as state employees, and or individuals acting color of law on behalf of the

State of Michigan.

## INTRODUCTION

Plaintiff, Deborah K Russell, is the paternal and only natural grandmother of these minor

children. She was awarded court ordered visitation with children R.Q and J. Q. by Sanilac County

Probate Court in 2006.  Sanilac County Department of Human Services and Child Protective

Services named as defendants in this matter, were involved in the custody of all three minor

children R. Q., J. Q. and M. Q. with and their mother Rebecca R. Kloss, in the years of 2009 and

2010, at which the children were voluntarily removed from the custody of their mother and given

to their father Dale, for reasons that their mother Rebecca involved them in her numerous

3

domestically violent altercations with numerous live in boyfriends and failure to protect,. This custody transfer was kept secret to prevent plaintiff from seeking custody of these children for their own protection and best interest as allowed under Michigan Compiled Laws. At the time of this custody transfer the father Dale had two domestic violence convictions which CPS did not considered a risk of harm to these children nor did it meet the legal requirements of custody being in the children's best interest.

Two years following the secret custody transfer in the early morning hours of November 16, 2012, the children were removed from their fathers home as he was arrested for his third domestic violence conviction and taken to the residence of their mother, Rebecca. At the time of these children being dropped on Rebecca's doorstep she had chosen to not exercise her biweekly visits with these children for the past 6 "weeks. An abuse and neglect case was initiated by caseworker Heidi Krause ("Ms. Krause"). Ms. Krause conducted herself in a manner which was extremely unprofessional and desturbing to plaintiff. Out of concern for these children, plaintiff contacted Ms. Krause's supervisor, Rick Foster ("Mr. Foster") regarding Ms. Krause's behavior and later proven comments. After plaintiff's contact with Mr. Foster, the six year long court ordered visits were not allowed. Plaintiff was not given notice or due process as secured in the U. S. Constitution. The plaintiff and all three children shared and enjoyed the mutual bonded grandmother/grandchild relationship. In fact the children saw plaintiff as a valued person they could confide in as to the abuse they endured in both parent's home and looked to plaintiff for protection. To prevent the children from telling of further altercations and exposure to drug usage in the homes they frequented and now live, and to retaliate against plaintiff for going to Ms.

4

Krause's supervisors, county directors and county commissioners, Ms. Krause took it upon herself to manipulate the court system, omit relevant information, providing false information, and encourage corrupt and illegal behavior of other defendants involved. Since all defendants knew of the gross misconduct and illegal behavior that enjoins them all in the conspiracy to violate the rights of these minor children and plaintiff. Plaintiff has not had any contact with plaintiff minors since November 23, 2012, despite her numerous attempts via court motions, pleas, conversations, and writings to officials of higher levels of government, only to have them continuously ignored as if she did nothing.

Plaintiff has in fact notified CPS and law officials that illegal use of marijuana is being frequently used by Patrick R. Quintano, Sr, his wife Jeanette Tropf Quintano and others that frequent the residence of 6071 Wildcat Rd, Croswell, MI in which the children live, only to again be ignored. There is also a prior report of the children's hair, skin and clothing smelling of marijuana which also went ignored. In fact in one conversation with a hotline employee plaintiff was told that, "some individuals can make more appropriate parenting decisions while under the influence of drugs so that it was not a concern", while other people are getting their children taken away for using medical marijuana away from the children, yet this recreational use is acceptable.

When plaintiff presented the misconduct to the county commissioners and a court administrator was hired it was found that all claims plaintiff made were true. Court employees that were involved in the case were removed from their positions and given other positions in the courthouse. At no time did Sanilac County Court

5

officials, officers or judges, nor any DHS/CPS state employee make any attempt to rectify the injustice and intentional Constitutional violations of these children and plaintiff exercised by their coworkers, employees, and counterparts.

Sanilac County DHS/CPS caseworkers, supervisors, court staff, judges, appointed and elected officials willingly and intentionally ignored proven evidence of gross misconduct. In fact, all defendants fully knew that Michigan State laws, department policy and procedures were not followed or adhered to in the effort to preform appropriate decisions regarding the children's best interest and protection. All defendants have gone above and beyond their call of duty to cover-up and conceal the wrong doings of eachother without regard for any law or procedure created to fully protect these children and other children who have the unfortunate experience of being involved in this system.

Plaintiff will provide proven evidence and testimony to support her claims of conspiracy, fraud, child endangerment, neglect, gross misconduct, abuse of power, perjury, criminal wrong doing, willful neglect and malice, intentional infliction of emotional distress on all plaintiffs, extreme and outrageous conduct, deprivation of United States Constitution First Amendment Rights, Fourth Amendment Rights, and Fourteenth Amendment Rights of all plaintiffs.

## FACTS

1. That plaintiff is the biological mother of the father ("Dale") and two other sons.

2. That minors R, J and M are currently in the physical custody of their mother Rebecca R. Kloss, who is a resident of 6071 Wild Cat Road, Croswell, MI, in Sanilac County.

3. That in 2006, per MCL 722.27b, Sec 7b, Plaintiff was awarded a court order for

6

Grandparenting time by Sanilac County Probate Judge R.T. Maltby, who is now retired in case

no 06–31401–DZ. This court order was upheld for over six (6) years by Hon. Maltby and his

predecessor, Hon. Allen Deegan, whom is also now retired. This order specifically granted

plaintiff grandparenting time visits with R and J, only because M's conception was not

disclosed to the court at the time of the order. Although this court order was on part granted

due to both parents voluntarily accepting the courts recommendation to court ordered

Grandparenting Time visits, plaintiff believes and evidenced by numerous court transcripts

and courtroom video that it was the only resolution that would prevent Sanilac County

Probate Judge from hearing further evidence of parental unfittness, which is a requirement of

motion denial. As numerous court transcripts reveal, both parents, together and separate,

have been said to be unfit.

4. That despite plaintiff's numerous attempts to get M included in the court order, she and M

were denied the stability of inclussion by Sanilac County Friend of the Court and most

recently defendant then acting Judge David L. Clabeusch, which caused M and plaintiff great

emotional upset when R and J were picked up for visits. Occassionally, for the parents'

convenience M would be allowed to go on visits with plaintiff, R and J.

5. That as this order reflects was based on the "best interest" of the children and that plaintiff

met and exceeded all the requirements under MCL 722.27b, Sec. 7 (6)(a–j) and the proven

evidence of the parents' unfitness.

6. That plaintiff and these children enjoyed a normal grandparent/child relationship outside of

the court order in which these children and both parents lived with plaintiff in her home and

plaintiff "baby sat" daily for them when they lived apart.

7. That over the existance of the six (6) year court order, plaintiff and the children R, J and M had a mutual very loving and bonded relationship. R, J and M entrusted plaintiff to confide in her of abuse and neglect they endured. Based on the statements made by these children plaintiff did make numerous reports via phone calls, personal appearance and written reports to Sanilac County Child Protective Services (CPS) workers.

8. That due to plaintiff's reports there was an open Sanilac County CPS case with caseworker Heidi Krause ("Ms. Krause") involving the children while in the custody of their mother ("Rebecca") for exposing and involving these children in her numerous domestically violent relationships, which resulted in custody of these children being given to their father Dale. This case number is unknown to plaintiff and CPS/DHS supervisors have failed to provide Dale with all requested information involving his children as requested in writing on July 8, 2014

9. That from time to time, plaintiff and her son Dale have had relationship problems initiated and encouraged by Dale's father, Patrick R. Quintano, Sr. ("Pat") and his current wife Jeanette Tropf-Quintano ("Jeanette").

10. This custody transfer was kept secret by CPS and both parents to prevent plaintiff from exercising her right to standing for custody under MCL 722.25, Sec. 5 (1). Both parents were advised of this standing numerous times by Hon. Maltby and Hon. Deegan on the record.

11. That at the time of this secret custody transfer, Dale had two convictions for domestic violence.

12. That on November 16, 2012, in the early morining hours the children were removed from

8

Dale's home due him being arrested for domestic violence and taken to Rebecca's home located at 36857 Oakwood Lane, Richmond, MI, which was located in Macomb County resulting in case no. 12-35627-NA1-3.

13. That prior to the actual dropping of the children at Rebecca's doorstep by Dale's then live-in girlfriend, Meghan Smith, Rebecca had made no effort to "reunite" with these children, as described by CPS/DHS in their attempt to manipulate the courts. In fact, Rebecca chose not to exercise her parenting time for the prior six weeks to November 16, 2012 and on numerous other occassions.

14. That at the time of the removal hearing of case no. 12-35627-NA1-3, Sanilac County CPS caseworker, Ms. Krause and Assistant Prosecutor, Eric Scott ("Mr. Scott") chose to intentionally omit such relevant information regarding the children's prior removal from their mother Rebecca and knowledge of being housed in a home with reported illegal drug activity to the court, preventing appropriate placement for these children based on their "best interest", therefore violating MCL 722.954(a)(5); MCL 712A. 13a(5); MCL 722.637, Sec. 17 (1), (2) (a), (b), (c); MCL 722.628, Sec. 8(2); MCL 750.505A; MCL 722.6332; MCL 750.483A (6)(A) (B); MCL 750.422(A)(B); 422 Mich 579, 586-587 (1985); MCL 712A. 13b (2)(d)(3); MCL 722.633 (Michigan Child Welfare Law Manual 1.4.2); MCR 3.965(E); MCL 767A 91(A)(B); PSM 713-01.

15. That upon hearing of this situation on November 16, 2012, plaintiff left work and went to the DHS office at 9:20a.m., asked to speak with Ms. Krause personally. Plaintiff presented herself to the receptionist who did contact Ms. Krause by phone. The receptionist stated, "Ms.

Krause, will meet with you shortly..". At 10:25a.m. the receptionist called plaintiff to counter and replied, "Ms. Krause is in a meeting and will call you immediately after she is free". To this date plaintiff has not recieved that returned phone call from Ms. Krause.

16. That plaintiff did attend the hearing held on November 21, 2012 before Referee, Russell Clark. Ms. Krause, Mr. Scott, court appointed attorney for Dale, Elizabeth Wisenbaugh, court appointed attorney for Rebecca, court appointed GAL for the children, Elaine Borkowski ("Ms. Borkowski") and Shelly Smith Friend of the Court were seated at the tables in that order. Plaintiff was seated in the gallery directly behind Ms. Krause. At the end of the proceedings but prior to dismissal, Ms. Krause bent down pretending to retrieve something from her bag, looked directly at plaintiff and stated, "I don't care what happens, I just want this over with". Plaintiff saw this comment extremely inappropriate and evidence of Ms. Krause's neglectful misconduct in her job duties.

17. That due to Ms. Krause's comment and out of desparate concern for her grandchildren, plaintiff did initiate personal contact with then GAL immediately following dismissal outside of the courtroom. Plaintiff explained to then GAL of the prior removal from Rebecca with Ms. Borkowski stating, "They do not care about the best interest of the children". Ms. Borkowski personally gave plaintiff her business card and asked her to contact her further as they walked out to their vehicles in the courthouse parking lot.

18. That at approximately at 1:20p.m. on November 21, 2012, plaintiff contacted Rick Foster, ("Mr. Foster"), Sanilac County CPS supervisor via phone.  Plaintiff explained to him in detail of Ms. Krause's conduct in the earlier hearing. Mr. Foster stated he would "speak to her and

have her return my call". Again as of today's date, plaintiff has not heard from Ms. Krause.

19. That plaintiff did again contact Mr. Foster regarding the misconduct of the Sanilac County CPS department. During this conversation, Mr. Foster stated, "what you may consider abuse and neglect may be different than what our office considers to be that.." when plaintiff referenced reports of of bruises, bite marks, domestic violence and such as reported to her by these children. Plaintiff also mentioned that in the only contact she had with Ms. Krause was four (4) years prior and it which time Ms. Krause stated to plaintiff, "do you have a crystal ball" and hung up on plaintiff never to have contact again.

20. That plaintiff did file with Sanilac County Court clerk's office a motion for Temporary Custody of Minor Children with legal standing provided under the Child Custody Act of 1970 being MCL 722.27, Sec 7(1) and MCR 3.204(A)(1-4). She was told by clerk staff that she "had to take it down to the Juvenile division and file it there". Plaintiff did so. Mr. Clark did in fact personally recieve plaintiff's motion for custody of these children and respectfully asked that Mr. Clark give her a signed reciept of such paperwork. However, plaintiff's motion went fully ignored by Mr. Clark and the entire Sanilac County court system, including then acting Judge David L. Clabeusch.

21. That plaintiff did have her court ordered Grandparenting Time visits with R and J on November 23, 2012. Due to what plaintiff believes to be intentional and malicious retaliation towards plaintiff by Ms. Krause and all other defendants, she has not been allowed to see or contact these children for over the last 18 months, which clearly violates the rights of these children and herself provided under the Constitutional Rights of familial association and also

the "due process" clause.

22. That days after the actual dropping off of these children on Rebecca's door step, Ms. Krause

determined that Rebecca's residence with her then live in boyfriend, who as all of Rebecca's

prior live in boyfriends, again has a crimal history of violent behavior, required Rebecca and

these children to move to a separate residence being 69290 Emma Drive, Richmond, MI,

which they (Rebecca and the children) were evicted from for non-payment of rent and

unsanitary living conditions after approximately two months.

23. That to the knowledge of CPS and Sanilac County Courts, these children have a lengthy

history of being moved from residence to residence by the parents, making this move to be

approximately the 35th residence in 7 years.

24. That on December 4, 2012, at 9:58a.m., plaintiff recieved a phone call from Jamie Reinke

("Ms. Reinke"), who stated she was the "Sanilac County Forster Care Specialsit" and she

"was calling to verify interest in caring for these children...". Towards the end of the

conversation after plaintiff mentioned her court ordered Grandparenting Time visits Ms.

Reinke stated, "I need to inform you that Heidi Krause and Rick Foster are considering

suspending your visits at this time". Plaintiff fully believes that this call was made to her to

merely make it "appear on the record" that Michigan Laws were being followed yet with the

full intent to fail to comply with all other aspects of the federal "Fostering Connections to

Success and Increasing Adoptions Act" of October 2008 and to further harass and inflict

emotional distress on her in Ms. Krause's attempt to retaliate against plaintiff for reporting

her gross misconduct to her superiors. This call alone substantiates plaintiff's entitlement to

notice and involvement of all proceedings and information involving her grandchildren as an "interested party", despite Mr. Scott's intentionally misleading and false remarks made in a later mentioned motion.

25. That on December 4, 2012, at 10:51a.m., plaintiff called Mr. Foster asking, "why he and Ms. Krause were considering suspending her court ordered Grandparenting Time visits?". At that time Mr. Foster told plaintiff, "he knew nothing about it and or the facts of the case and he would check into it and get back you (meaning plaintiff)". Again, as of today's date, plaintiff has not recieved any further contact from Mr. Foster.

26. That on December 4, 2012 at 10:56a.m., plaintiff called Shelley Marnar, Sanilac County DHS/CPS supervisor. In that conversation Ms. Marner stated to plaintiff, she "did not believe there was any reason to be upset" and "not knowing anything about the case would check into it and get back with you (meaning plaintiff)". Also in that conversation, Ms. Marnar requested that plaintiff fax her a list of violations she believed were committed by Ms. Krause and Mr. Foster. Plaintiff faxed her an eight page list of violations on December 4, 2012. Again, as of today's date plaintiff has not yet heard back from Ms. Marnar.

27. That after numerous attempts and provable contacts with Rebecca, plaintiff filed a "Complaint For Contempt Of Court for Refusal of Visits with the Sanilac County clerk's office on December 21, 2012 at 2:38p.m., which provided a hearing date of January 16, 2013 at 1:30p.m, before Judge Gregory S. Ross. This hearing was then rescheduled for the court's convenience to February 7, 2013 at 3:00p.m., before acting judge David L. Clabuesch, stating the reasons as, " Due to an open abuse and neglect case all filings must be heard before the

same judge." Again, to this date plaintiff and these children have not recieved "due process" as required under the U.S. Constitution in regards to any justifiable reason or lack thereof for suspension of her court ordered Grandparenting Time.

28. That plaintiff also contacted former St. Clair/Sanilac County DHS Director, Kay E Andrzejak ("Ms. Andrzejak") by letter explaining such misconduct. Again without recieving a reply.

29. That plaintiff contacted the Sanilac County DHS office, asking the receptionist for Ms. Andrzejak's contact phone number. At that time plaintiff was told that "Kay has retired and the new director was Deborah Walbecq ("Ms. Walbecq")" and was provided the phone number. Plaintiff called that number and spoke with the receptionist who stated she would would have Ms. Walbecq return the call after 1:00p.m. Plaintiff called again at 1:31p.m. only to again leave a message with the receptionist. Days later Ms. Walbecq did return plaintiff's phone call at 4:45p.m. Ms. Walbecq repeatedly asked plaintiff, "What is it you want me to do?" Plaintiff's reply was, "To let me see my grandchildren and to keep them safe". As the conversation went past 5:00p.m Ms. Walbecq made it clear to plaintiff that she "was now working after hours" in a what plaintiff believes was a tone of voice conveying annoyance.

30. That on December 29, 2012, plaintiff recieved a letter bearing the signature of Ms. Andrzejak. The first page was dated December 19, 2012 and the second page bearing Ms. Andrzejak's stamped signature was dated December 14, 2012. Plaintiff fully believes that due to Ms. Andrzejak's retirement and the date differences on each page, this letter was intentionally altered and bearing the unapproved signature of Ms. Andrzejak without her knowledge, therefore committing fraud, forgery, and intentional gross misconduct. All defendants have

14

knowledge of this fraudulent letter but have chosen to repeatedly ignore it's existance.

31. That as Mr. Scott stated, "Multiple hearings were held in the NA case, the most significant of which is January 22, 2013. Ms. Russell (plaintiff) attempted to participate in the mediation conference, but was not permitted to do so, as she had not been ordered to attend and was not a party to the NA case". In fact, plaintiff arrived at the Probate Courtroom on the scheduled date and time only to find it empty. Mr. Scott also states, "The mediation conference was held on the third floor of the courthouse in the law library." Plaintiff fully believes that due to the later provided proof of conspiracy, gross misconduct and intentional violations of Michigan and Federal laws committed by all defendant's this hiding of this "most significant" conference was in fact intentionally to prevent plaintiff from attending and again was one of many attempts to prevent the Sanilac County Courts from hearing plaintiff's testimony and viewing plaintiff's evidence, as allowed under MCL 712A. 13b(5) and (6), therefore not allowing the Sanilac County Court to make a just and appropriate decision based on the best interest of the children.

32. Plaintiff fully believes that if in fact all defendant's truly were concerned about the best interest of these children they would welcome any and all testimony and evidence relevant to their case as well as to adhere to and comply with all policies, procedures, state and federal laws to ensure the children, not the defendants, were guarenteed safety and due process as provided under the

U. S. Constitution.

33. That at plaintiff's February 7, 2013 hearing, before then acting Judge David L. Clabeusch

("Mr. Clabeusch"), plaintiff was, as courtroom video, transcripts and testimony will prove was without cause, intimidated, threatened, degraded, bullied, verbally abused, mocked, mistreated and deprived of "full protection" and "due process" privilieges afforded her under the U.S. Constitution, therefore leading to further deprivation of the children's U.S. Constitutional rights to "full protection", "due process" and "familial association" privileges provided them. Unfortunately, Mr. Clabeusch adjourned the hearing to March 21, 2013 at 10:30a.m. only to repeatedly subject plaintiff to further bullying, verbal abuse and miscarriage of justice as will courtroom video, court transcripts and witness testimony will prove.

34. That also during the February 7, 2013 hearing, Mr. Scott interupted plaintiff's open statement without standing or Mr. Clabeusch's invitation, knowingly and with malice intent, as courtroom video, court transcripts and witness testimony will prove his abuse of power and conspiracy, stood up from along the wall seating and stated, "upon behalf of Child Protective Services caseworker Heidi Krause and her supervisor Rick Foster, I recommend that plaintiff's visits be suspended due to accusations made by plaintiff". Mr. Scott who was not at the litigant table nor invited to speak by anyone did in fact abuse his power to intervene, knowingly commit perjury to further deprive plaintiff and these children of their "full protection", "due process" and "familial association" rights provided them under the U.S. Constitution, and clearly are in violation of MCR 1.105; MRPC 1.0; MRPC 1.1(a), (b), (c); MRPC 1.2 (a) and (c); MRPC 3.4(a), (d), (e),and (f); MCRP 3.5(a) and (b); MRPC 4.1; MRPC 4.3; MRPC 4.4; MRPC 6.5(a) and (b); MRPC 8.3; and MRPC 8.4(a), (b), (c), (d) and (e); MCR 1.6(c)(3) and as evidence of the efforts and extent to support plaintiff's claims of further conspiracy and CPS retaliation towards her.

16

The "accusations" stated as reason for denying plaintiff and these children' continued contact through this court order have since been found to be true facts resulting in Mr. Scott's dismissal from this case.

35. That as plaintiff's evidence will prove Sanilac County Courts have been intentionally mislead, provided with false statements, and knowingly committed perjury by commenting that suspension of plaintiff's court ordered visits are part of the "reunification efforts" between the mother and these children. In fact, at no time over the two year period of the children being in the custody of their father Dale, did their mother Rebecca initiate or make any effort to fulfill the requirements to reunite with the children and regain custody of them.

36. That in July, 2013, plaintiff sent an email to Sanilac County Commissioners. Due to her presenting details of her case, court administrator, Brian Henderson ("Mr. Henderson") was hired to evaluate the misconduct of defendants. Upon speaking with Mr. Henderson, plaintiff was told, he "viewed the courtroom video and found what was said to be true and that he has "repremanded" those responsible for their part in this situation, however he has no control over the DHS/CPS employees for their intentional acts". Based on this information plaintiff can verify that former Judge David L. Clabeusch is and has not been hearing cases in Sanilac County courts leaving Hon. Gregory S. Ross as chief judge; Mr. Clark has been removed from his position as referee, handing the reigns to Heather Zang ("Ms. Zang"); Mr. Scott has not appeared on behalf of Sanilac County DHS/CPS in further hearings of this case; Mr. Foster although having never personally particpated or appeared at prior court hearings in this case has been replace by Jodi Shinn; Ms. Walbecq has been replaced by

17

William Weston who refuses to return any form of communication with plaintiff; Ms. Krause

has been removed from this case as caseworker handing the reigns to Kristine Kreger; Dale's

court appointed attorney Elizabeth Wisenbaugh, has been replaced; and as of this date most

recently, the children's court appointed GAL, Ms. Borkowski, has been replaced after over 18

months of involvement.

37. That as plaintiff's evidence will prove that Ms. Krause and Ms. Kreger, continually threatened

both parents with termination of their parental rights if they had any contact, formed a

relationship or allowed the children and plaintiff to have any form of contact. Since the father

Dale and plaintiff have began to rebuild their parent/child relationship, Ms. Kreger has

initiated termination of Dale's parental rights despite the numerous efforts of fulfilling the

stated and written requirements to regain custody of his children.

38. Ms. Borkowski was removed due to findings that revealed she represented Dale in a previous

domestic violence case therefore creating an ethical issue of conflict of interest. When this

issue was brought before the court, defendants, Ms. Borkowski, Ms. Kreger, Ms. Zang, and

testified under oath, "this issue had previously been discussed in length and it was not a

hinderance to the proceedings". Ms. Zang ordered court staff to search court transcripts for

that "lengthy discussion" and the hearing was adjourned to July 1,2014, at which it was

determined no such discussion lengthy or otherwise was on record regarding a conflict of

interest, therefore fully supporting plaintiff's claims of willful conspiracy, perjury, abuse of

power, neglect, abuse and intentional denial of plaintiffs' and father Dale's rights to "full

protection", "due process" and the right of "familial association" provided them under the

18

U.S. Constitution.

39. That after Dale recieved partial copies of his case file from CPS/DHS and nothing relating to the case in which these children were removed from their mother Rebecca, as requested and required by law, it was found that Pat and Jeanette Quintano intentionally, willfully and with malice, supplied false information to CPS and the Sanilac County Courts again creating perjury and adjoining them to plaintiff's claims of conspiracy and fraud.

40. That if in fact all defendants provided relevant and truthful information and performed their job duties as required by Michigan State Law in the best interest of these children, plaintiffs' rights of "full protection", "due process" and "right to familial association" clauses of the U.S. Constitution would not have been violated.

19

## US CONSTITUTION RIGHTS VIOLATIONS

42 US Constitution § 1983
42 US Constitution 42 USC § 1983, ARTICLE 4
42 US Constitution § 1983 ARTICLE 5
US Constitution Article VI, Paragraph II
10 US Constitution § 927, Article 127
18 US Constitution § 241
18 US Constitution § 242
18 US Constitution § 872
18 US Constitution § 1001
18 US Constitution § 2384
21 US Constitution § 1175(b)(2)(C)
28 US Constitution § 453
29 US Constitution § 524A
42 US Constitution § 1985
42 US Constitution § 3617
42 US Constitution § 12203
FIRST AMENDMENT – RIGHT TO FAMILIAL ASSOCIATION
FOURTEENTH AMENDMENT
Federal "Fostering Connections to Success and Increasing Adoptions Act" of October 2008
Stable Families Act
Constitution of Michigan of 1850, Article 6, Sec. 24
Michigan Constitution (1908) Art. 7(13)
Michigan Constitution of 1963. amended Article 6, Sec. 30
Michigan Child Protection Law
Child Custody Act of 1970, Act 91, Sec. 7b
1973 PA 116
5 CFR § 2635.101, Sec. 101 parts a, c, e, f, g, h, k and m
25 CFR 11.432
Public Officer Law, Section 13

## MICHIGAN COURT RULES
MCR 1.103
MCR 1.105
MCR 1.106
MCR 2.504
MCR 3.203
MCR 3.204
MCR 3.205
MCR 3.216
MCR 3.218

MCR 3.805
MCR 3.806
MCR 3.902
MCR 3.903
MCR 3.911
MCR 3.914(A)
MCR 3.915
MCR 3.917
MCR 3.921(B)
MCR 3.923(B)
MCR 3.924
MCR 3.925
MCR 3.961 thru 3.979
MCR 3.963(A)
MCR 3.965(E)
MCR 3.966(A)(1), (B)(3), (C)(2)(c)
MCR 3.971
MCR 3.972
MCR 3.974
MCR 9.104(1), (2), (3), (4)
MCR 9.205

**CODE OF JUDICIAL CONDUCT**
Canon 1
Canon 2
Canon 2B
Canon 3A(1), (8)

**MICHIGAN COMPILED LAWS**
MCL 700.5213(2)
MCL 712A.1(3)
MCL 712A.12
MCL 712A.13a(5), (14)
MCL 712A.13b(2)(d)(3), (5), (6)
MCL 712A.14(1)
MCL 712A.18b
MCL 712A.18f(3)(e)
MCL 712A.18f(6)
MCL 722.21
MCL 722.23
MCL 722.25
MCL 722.26, Sec. 6(1)
MCL 722.26c, Sec 6(c)(1)(b)

MCL 722.26e, Sec. 6E(1)
MCL 722,27, Sec, 7(1)(a) thru (f)
MCL 722.27b
MCL 722.622(F), (J)
MCL 722.111 – 128
MCL 722.623(1)–(4)
MCL 722.624, Sec. 4
MCL 722.625, Sec. 5
MCL 722. 627, Sec. 7
MCL 722.628, Sec. 8(2) Child Protection Law Act 238 of 1975
MCL 722. 628, Sec. 8(e)
MCL 722.632
MCL 722.633
MCL 722.637
MCL 722.638
MCL 722.954(a)(4)(b), (a)(5)
MCL 750.92
MCL 750.136b (1) thru (4)
MCL 750.157a
MCL 750.280
MCL 750.422A
MCL 750.483
MCL 750.505A
MCL 750.1228

## MICHIGAN CHILD WELFARE LAW MANUAL

Chapter 1
4.2.2
4.2.3 [MCL 712A13a(12)]
4.4.2 [MCL 722.954a(2), (2)(a), (b)
4.7.1 [MCL 712A.13b(1)(b)
4.7.2
4.7.5
PSM 711–4
PSM 712–8
PSM 713–1
PSM 715
PSM 716
PSM 718

NUMEROUS MISC. VIOLATIONS OF CODE OF ETHICS, PROFESSIONALBEHAVIOR AS REQUIRED
BY LAW AND PUBLIC PERFORMANCE.

## RELATED CASES

Bell Atlantic Group v Twombly, 550 U.S. 544, 555 (2007) quoting Conley v Gibson, 355 U.S. 41, 47 (1957)

Connolly v Connolly (2014)

People v Cavaiani 172 Mich App. 706 (1988)

Landeros v Flood 17 Cal. 3d. 399.551 P.2d 389

Thomas v St. Vincent and Sarah Fischer Center

Schultz v Wilson, 304 Fed, Appx. 116, 120 (3rd Circuit 2008)

Roberts v Mentzer, No. 09-3251, 2010 WL2113405, 2 (3rd Cir. May 27, 2010)

Zablocki v Redhail, 434 U.S. 374, 388 (1978)

Doe v Fayette County Children and Youth Services, No. 8-823, 2010. WL 4854070, *18-19 (W.D. Pa. Nov. 22, 2010)

Behm v Luzerne County Children and Youth, 172 F. Supp.2d, 575, 585 (M.D. Pa. 2001)

Monell

Yick Wo v Hopkins

Elrod v Burns, 96 S Ct 2673; 427 U.S. 347 (1976)

Santosky v Kramer, 102 S Ct. 1388; 455 U.S. 745 (1982)

Matter of DeLaney,k 617 P 2d 886, OK (1980)

J.S. And C., 324 A 2d 90; supra 129 NJ Superat 489

Gross v State of IL, 312 F 2d 257 (1963)

Griswold v Connecticut, 381 U.S, 479 (1965)

Moore v City of East Cleveland, 431 U.S. 494, 97 S Ct. 1932, 52 L. Ed. 2D 531 (1977)

Twombly, 550 U.S. At 555– 556 (2007)

Ashcroft, 129 S. Ct at 1949 (2009)

Robinson v Via, 821 F 2d 913 (2d. Cir 1987)

Adam Gorman, minor (M.G.), Sanilac County CPS case

Michael / Falicia Westum, minor (Z.W.), Sanilac County/St. Clair County CPS case

Daniel Sweet, minor (M.S.), Sanilac County CPS case

Children's Rights v State of Michigan (2006) to include 2012–2013 evaluations

Smith v Org. Of Foster Families for Equality and Reform, 631 U.S. 816, 845 (1977)

Matter of Youmans, 156 Mich App 679, 686–687 (1986)

In the Matter of C.R. 250 Mich Qpp 185, 198 (2001)

In re Richard Hudson, 483 Mich 928, 931 (2009)Traxel v Granville

24

## **RELIEF REQUESTED**

Plaintiffs request that these children in case no. 12–35627–NA–1–3 of Sanilac County, Michigan, be fully dismissed and all orders arising from this case be recinded with no further prosecution due to the continued gross misconduct, violation of all rights afforded under the U. S. Constitution, state and federal laws and all department laws, policies and procedures; that if this courts deems necessary in the further protection of these minor children, temporary custody be awarded to plaintiff; demand for a jury trial; and all defendants be held accountable for their participation in the gross misconduct of conspiracy, fraud, child endangerment, neglect, abuse of power, perjury, criminal wrong doing, willful neglect and malice, intentional infliction of emotional distress on all plaintiffs, extreme and outrageous conduct, deprivation of United States Constitutional Rights including but not limited to the First Amendment Rights, Fourth Amendment Rights, and Fourteenth Amendment Rights of all plaintiffs; that plaintiffs be awarded the sum of **$4.4 million** by each defendant baring any award from bankrupcy proceedings; and individuals holding any professional credentials be removed from their immediate positition which involves the direct contact, care and supervision of any child or individual under the age of 18, immediately.

*Deborah K. Russell*
Deborah K. Russell
6957 Burnsline Rd
Lexington, MI  48450
(810) 710-7076

25

JS 44 (Rev. 12/12)                 **CIVIL COVER SHEET**       County in which action arose *Sanilac*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DEBORAH K. RUSSELL, pro se,
individually and as grandparent and on behalf of
herself and minors R. Q., J. Q. and M. Q.

**DEFENDANTS** *Sanilac County*

**(b)** County of Residence of First Listed Plaintiff    Sanilac County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Sanilac County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government      ☒ 3   Federal Question
     Plaintiff               *(U.S. Government Not a Party)*

☐ 2   U.S. Government      ☐ 4   Diversity
     Defendant               *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*             *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |     Product Liability | |     28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |     Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|     & Enforcement of Judgment |     Slander |     Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |     Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |     Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark |     Corrupt Organizations |
|     Student Loans | ☐ 340 Marine |     Injury Product | | | ☐ 480 Consumer Credit |
|     (Excludes Veterans) | ☐ 345 Marine Product |     Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |     Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |     Act | ☐ 862 Black Lung (923) |     Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |     Product Liability | ☐ 380 Other Personal |     Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |     Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |     Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - |     Product Liability |     Leave Act | |     Act |
| |     Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** |     Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |     Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | |     or Defendant) |     Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |     Sentence | |     26 USC 7609 |     State Statutes |
| ☐ 245 Tort Product Liability |     Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |     Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |     Other | ☐ 550 Civil Rights |     Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |     Conditions of | | | |
| | |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original      ☐ 2   Removed from      ☐ 3   Remanded from      ☐ 4   Reinstated or      ☐ 5   Transferred from      ☐ 6   Multidistrict
     Proceeding          State Court          Appellate Court          Reopened          Another District          Litigation
                                                                    *(specify)*

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U. S. Constitution Code 1985
Brief description of cause:
Deprivation of Constitutional Rights; Conspiracy; fraud; perjury; abuse of power; gross misconduct; intentional infliction of emotional distres

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION      **DEMAND $**          CHECK YES only if demanded in complaint:
    UNDER RULE 23, F.R.Cv.P.                                  **JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*      JUDGE                          DOCKET NUMBER

DATE                      SIGNATURE OF ATTORNEY OF RECORD
August 13, 2014          X *Deborah K Russell*

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT            APPLYING IFP           JUDGE           MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1.　　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.　　　　　Other than stated above, are there any pending or previously
　　　　　　discontinued or dismissed companion cases in this or any other　　☒ Yes
　　　　　　court, including state court? (Companion cases are matters in which　☐ No
　　　　　　it appears substantially similar evidence will be offered or the same
　　　　　　or related parties are present and the cases arise out of the same
　　　　　　transaction or occurrence.)

If yes, give the following information:

Court:　Sanilac County Family Court _____

Case No.:　06-31401-DZ and 12-35627-NA 1-3 _____

Judge:　Chief Judge Gregory S. Ross _____

Notes :